Judge Marshall
delivered the opinion of the Court.
This bill was filed in February, 1846, by Robert Martin against John Martin, to recover a large amount of usury alledged to have been paid by the former to the latter upon various debts specified in the bill. The answer admits that two small notes were, as alleged in the bill, executed wholly for usurious interest., upon two large notes specified by the complainant, and that these four notes were paid by him as alleged. It must be considered also as admitting usury to have been included in two other notes which had also been paid, but denies the amount of usury charged, and relies upon lapse of time and the statute of limitations, and prays a set off for alleged deficiency in a tract of land purchased by him upon the representation of the complainant to whom it had belonged at the 'time of the purchase, t ha tit contained a much larger quantity than is actually in it. .
The two last mentioned notes on which the contest arises, being one for about $1480, and the other for about $504, both due on the first day of March, 1840, were executed in renewal of notes previously executed by William C. Thomas and Azariah Martin, who ha'd been partners. The larger of these notes appears to have originated in the loan of $500 about the year 1827. The other, by a loan of about $250, or $300, in 1832 or 1833. They were increased to their respective amounts by frequent renewals and compounding of interest at the rate of ten per cent, per annum. Before either loan was repaid, Azariah Martin died, and the complainant, Robert Martin, his father and sole heir, *305 executed the renewal notes with W. C. Thomas, the surviving partner and as his surety. P. Bush who administered on the estate of Azariah Martin, sold the property of A. Martin and W. C. Thomas, as administrator, and under a power from W. C. Thomas and Robert Martin. At this sale R. Martin purchased a slave of the estate of Azariah Martin, and executed to Bush his note with security, for about $875, the amount of his purchase, due the first of January, 1841. Upon the order of R. Martin, and a promise of indemnity from John Martin, Bush paid the two notes for $1480 and $504, by transferring the notes of divers persons executed for property purchased at the sale aforesaid, and among them the note of R. Martin for $875, w7hich was not completely paid until 1845. The two notes for $1480 and for $504, thus taken up by Bush, were afterwards delivered by him to Robert Martin upon his receipt for their amount with the interest. And Rf Martin presented them for allowance in a suit brought by Bush as administrator, for the settlement of the es'tate of Azariah, which, as well as the entire property of A. Martin and Thomas, proved insufficient to pay their debts. In that suit there was a pro rata allowance of 80 percent, upon all the debts, with interest calculated on them up to October, 1840. This pro rata was allowed to R. Martin in 1844, upon the said two notes presented by him, but he did not receive it for some years afterwards, and it does not appear that he received interest accruing after October, 1840.
John Martin in his answer, relies upon this allowance of 80 per cent, without any deduction on account of usury, as precluding the present claim. He also relies upon the record of a suit brought by Bush as administrator of A. Martin against him for the usury in the same two notes, shewing that the bill was dismissed agreed, as a bar. And Bush who was made a defendant to the present suit, claims a decree as administrator for four-fifths of the usury which may have been paid to John Martin on the debts of Azariah,
■ prese* tecTfor de° cision.
The Case was referred to a commissioner for the ascertainment of the usury paid, and with directions to tajíe an(j rep0rt evidence. Upon his report, swelled to a great volume by numerous depositions impeaching and sustaining the characters of two of the complainant’s witnesses, who depose as to the usury contained in the two notes now in question; the Court rejecting the claim for the usury in these notes, decreed to the complainant $257 75 cents, on account of the principal and interest of the two small notes admitted to be wholly usurious.
rev*s'nS this decree, the principal questions presented by the record and discussed by the counsel, relate, to the application of the statute of limitations, and are, first, at what time did Bush take up the two notes of $1480 and $504, by transferring other notes for them. And second, whether the payment of the usury in those notes was complete at that time, or whether because one of the notes transferred was the note of R. Martin, who was also an obligor in the notes taken up by Bush, the transaction should to the extent of that note, be regarded as a mere continuation or renewal of the pre-existing debt, and as thus postponing the payment of the usury until the last note of R. Martin was discharged.
Upon this last question, we think there is no room for doubt. If Robert Martin Had, in consideration of the two notes held by John Martin, transferred to him the notes of others for part of the debt, and executed his own note for the residue, the previous debts would have been thereby in part paid and extinguished by the transferred notes, and in part continued and renewed by the note of the debtor himself. And in that case the payment, as repeatedly decided by this Court, would have been applied to the l’eal debt and its legal interest, and the usury would have been considered as being contained in the renewal note, and as remaining unpaid until that note was discharged. But this was not either the form or the substance of the transaction. The note of *307 R. Martin for $875 was not executed in consideration of the previous debts, nor to John Martin, the creditor who held them, but was executed by R. Martin in consideration of property of the estate of Azariah Martin purchased by him, and was transferred to the creditor by the administrator of that estate, just as the other similar notes were transferred,-in discharge of the preexisting debts, Being-like the other similar notes a distinct and independent note and debt before the transfer, it di.d not any more than the others, lose its distinct character by the traiisfer, or become a- part and' continuation of the debt for which it was transferred. To *shew that the identity, of one of the obligors in the note taken up, and in the note transferred for it, does not determine the identity and continuance of the debt, we put the following case: A as principal, and B as his surety, are co-obligors in a note to C, which includes usury, A for the purpose- of paying this and other debts sells his owa property, and B becoming a purchaser to the amount of their debt to C, executes his note with surety to A who takes up the note to C, by transferring to him the note of B, which B some time afterwards pays. Most obviously, A has paid his own debt including the usury with his o.wn property converted into the note of B, and B in paying that note, has only paid his own debt due-for the property purchased by him. He ha-5 not paid the debt of A, for that was paid and extinguished by the transfer of his note. He has not paid usury to C because his own note was for the price of A’s property without usury in it. His-payment of his own debt gives no demand either against A as his principal, or against C for usury. But A has the right to sue for the usury as soon as he takes up the original note with that of B. In the present case, the original debt was due from A. Martin and W. C. Thomas, upon the death of A. Martin, R. Martin become bound for it as surety foi Thomas, but it was still the debt of A. Martin and Thomas, so far as R. Martin is concerned, and was taken up by the adminis *308 trator of A. Martin, by the transfer of notes given upon the sale of his property, and in part by the note of R. Martin, given for a portion of that property. The analogy between this and the case supposed, seems, therefore, to be complete. And if this transfer of notes by the administrator took place more than five years before the commencement of this suit, the demand for the usury by whomsoever made, is barred by the statute of limitations.
One who pay»; his debt in which, there is usury, by the notes of. others, may forthwith sue for-the usury.
A surety on a note »n which there is usury which, is paid by his principal cannot reclaim the usury.
The question as to the time at which the original debts and the usury in them were paid, arises, not from any difficulty as to the fact itself, which is clearly proved by Bush to have taken place in March or Aprilf 1840, but from the failure of the defendant, John Martin, to answer specifically, a statement in the amended bill of the complainant, which after charging that P. Bush paid the two notes in question in the manner stated in paper A, exhibited in a certain record which is described, adds, “This payment was made on the 1st of March, 1841.” And the bill goes on immediately to contend that as to $875, part of the debt lor which it says R. Martin was the surety of A. Martin and Thomas, this was not a payment until 1845, when R. Martin’s. note for that sum, due 1st January, 1841, and transferred by Bush to John Martin in part satisfaction of said debt, was paid — and calls upon the defendant John Martin, to answer and further to say as to the usury, &c., &c., &c. The answer of John Martin, denying the usury in the two notes, admits that they were paid as stated in paper A referred to, denies that the legal effect of the said payment was such as alleged in the amended bill — denies that complainant was surety of Thomas and A. Martin in the note for $875, and says if there was any usury in either of the said notes, it was paid as stated in his answer to the original bill, and not in the payment of the note for $875, but he denies that there was any usury in said notes, and adopts his original answer on that subject.
*309 Upon looking to the original bill and answer, we find that the former is rather confused in its statements as to the date and time of payment of the two notes in question, and the time up to which interest and usury were included therein, leaving it uncertain whether it was up to the 1st of March, 1840, or the 1st of March, 1841. The answer denies that the loan of $500, was renewed and compounded with usury up to the first of March, 1841, (as is expressly alleged in the bill,) and alleges that the last notes for the two loans were due the first of March, 1840. And that Bush paid them on the order of the complainant by notes taken on the sale of property, &c., as already stated. There is no specific statement as to the time of this paj^ment either in the bill or the answer. The paper A, referred to by both parties bears no date, and in the statement of the transaction does not show when it took place, but might apply as well to a settlement on the 1st of March, as to one on the 1st of Janurv, 1841, and as-well to one in the March or April preceeding as to either of the other dates. It shows however that some of the-notes transferred in payment including-that of R Martin, were due on the 1st of January, 1841. And that one was due on the 1st of March, 1841. And as the amended bill does not say that this settlement took place on the 1st of March, 1841, but that this payment took place at the latter date. And goes on immediately to speak of the legal effect of the transaction, the defendant might have supposed that in stating that the payment took place on the 1st of March, 1841, the complainant meant to assert that in legal effect it took place at that time, because the interest on a balance of the debt was calculated' up to that time at which one of the notes transferred in payment fell due, and under this supposition he might have considered his denial of the legal effect of the transaction, being such as alleged, as being a denial of the entire allegation as to time ef payment.
One creditor may not claim, to have the exclusive benefit of a debt due the Intestate, from the fact of his bringing such a claim to the notice of the administrator in a suit for distribution under the act of 1839--he is only entitled 10 his pro rata of it.
It may be questioned whether the defendant is entitled to this liberal and indulgent construction, without which, he could not have any benefit from the evidence contradicting and falsifying the allegation which he-has failed to answer. But we do not deem it necessary to decide this point, because upon other facts relating to this payment, we are of opinion (as contended by the counsel,) that Robert Martin is not entitled to sue for the usury paid by the property of the original debtors W. C. Thomas and Azariah Martin; but that the right of action or suit therefor vested in Bush, who, as administrator of A. Martin, and as attorney for his heir and his partner, sold the property of the real debtors, took the notes therefor, payable to himself, as he had a right to do, and applied them to the payment of their debts; and who, although he has in this manner paid this debt in full, has not paid, and has not the means of paying other debts, and therefore should recover this usury for that purpose, if it is recoverable at all. The bill does not allege that he refuses to sue for it, but he has in fact demanded a large part of it by cross bill in this suit. Nor could the present complainant, if he recovered the usury, hold it free from the debts of A. Martin and W. C. Thomas. His being himself one of their creditors, does not entitle him to sue for a demand which should be appropriated to the benefit of all.
We are of opinion therefore, that the complainant has no right to complain that his claim for the usury in the notes for $1480 and $504 30 cents, paid in fact, more than five years before the institution of this suit,, and out of the property of the veal debtors, and not of himself, has been rejected. Nor do we perceive that injustice has been done in calculating the interest on the two small notes for usury. There is no allegation nor proof that usurious interest was paid on tbese-notes. The usury actually allowed in the decree as-paid on the two small notes, was paid wholly by the-property of the complainant, and P. Bush having no *311 interest therein, his cross error assigned upon that point is not available. He has not complained of the decree in any other respect, and his cross bill does not seem to have been disposed of. The claim of John Martin for a set off on account of a deficiency in the land was properly rejected, because, if it be properly a subject of set off in this case, the facts by which it might be sustained, are not proved except by depositions taken before the Master Commissioner, and which were excepted to because that part of the case was not referred to him, and he had no authoi'ity to take the evidence on that subject. The cross errors of the defendant, John Martin, as to this matter, are therefore not sustained.
Turner for plaintiffs; Caperton and Huston for defendants.
With regard to the costs in the Circuit Court, which were decreed against John Martin, we see no ground for reversing the decree.
Wherefore the decree is affirmed.